This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant, James A. Chiampo, appeals from the judgment of the Wayne County Municipal Court, which convicted him of resisting arrest and menacing. We affirm.
 {¶ 2} On April 1, 2002, Defendant was arrested for domestic violence. He was then charged with resisting arrest, in violation of R.C. 2921.33(B), and menacing, in violation of R.C. 2903.22. Defendant pled not guilty and the case proceeded to trial. The court found Defendant guilty on both charges and sentenced him accordingly. Defendant timely appealed raising two assignments of error for review.
 ASSIGNMENT OF ERROR I "The trial court erred by overruling [Defendant's] motions for acquittal and finding [Defendant] guilty of resisting arrest when there was insufficient evidence that the arrest was lawful."
 {¶ 3} In his first assignment of error, Defendant maintains that there was insufficient evidence to convict him of resisting arrest. Defendant essentially argues that the officer's warrantless entry into his home was in violation of the Fourth Amendment right to be protected against unreasonable searches and seizures and thus his in-home arrest was unlawful. We disagree.
 {¶ 4} As keepers of the peace, a police officer's duties entail preventing crime, "preserve[ing] the peace," and "protect[ing] persons and property." State v. Hyde (1971), 26 Ohio App.2d 32, 33, quoting R.C. 737.11. "The right of the police to enter and investigate in an emergency without the accompanying intent to either search or arrest is inherent in the very nature of their duties as peace officers." Hyde,26 Ohio App.2d at 34, quoting United States v. Barone (C.A.2, 1964), 330 F.2d 543, 545. Accordingly, the need to protect or avoid serious injury is justification for what may otherwise be a Fourth Amendment violation. See Hyde,26 Ohio App.2d at 34; State v. Burgess (Nov. 4, 1999), 5th Dist. No. 99CA00035 (finding the existence of exigent circumstances where an officer entered a residence to check on the welfare of an occupant who may have been injured). A showing that an officer had a reasonable belief that an emergency existed is sufficient to establish an emergency exception to the warrant requirement. State v. Jones, 9th Dist. No. 21158,2003-Ohio-730, at ¶ 18, citing Hyde, 26 Ohio App.2d at 34.
 {¶ 5} In the present case, Officers Daniel Grande and Brian Waddell were responding to an emergency call for help. The Wooster Police Department received a call concerning an incident of domestic violence at the Chiampo residence. Officer Grande testified that upon arriving at the residence, he went to the front door, opened the screen door, and then knocked. Sandy Chiampo ("Mrs. Chiampo"), Defendant's wife, answered the door. He recalled that Mrs. Chiampo and her daughter Amy Chiampo ("Amy") were crying and upset. Officer Grande indicated that Mrs. Chiampo was holding the door open as he entered. Mrs. Chiampo testified that she stepped aside as the officer entered. Officer Grande stated that Defendant approached the entranceway carrying a camcorder and speaking on a cell phone. He further stated that the individuals were all talking at once, and Amy was waving papers around in an attempt to catch his attention. Defendant then requested that Officer Grande leave. Officer Grande testified that he did not comply with Defendant's demands and explained to Defendant that he was there investigating a call concerning a domestic violence complaint. Officer Grande indicated that he would leave when he felt that there were no problems.
 {¶ 6} Under such circumstances, we find that Officer Grande had reasonable grounds to believe that an emergency existed in Defendant's residence. See Hyde, 26 Ohio App.2d at 34. The officer had the authority to enter and investigate without a warrant. See id.
 {¶ 7} Furthermore, Mrs. Chiampo consented to his entrance. Entry with the consent of one with common authority over the premises is a well-established exception to the requirements of a warrant. Schnecklothv. Bustamonte (1973), 412 U.S. 218, 242-43, 36 L.Ed.2d 854. When such consent is given, it is valid against anyone in the residence. State v.Henderson, 12th Dist. Nos. CA2002-08-075 and CA2002-08-076,2003-Ohio-1617, at ¶ 20. Officer Grande could have reasonably concluded that Mrs. Chiampo's action, of holding the door open and stepping aside, was an invitation for him to enter. The fact that Mrs. Chiampo stepped aside to allow Officer Grande to enter is legally sufficient to conclude that she impliedly consented to his entry into the home. See Henderson at ¶ 21. Accordingly, Defendant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "The trial court erred by finding [Defendant] guilty of the charges of resisting arrest and menacing when such findings were against the manifest weight of the evidence."
 {¶ 8} In his second assignment of error, Defendant argues that his convictions for resisting arrest and menacing were against the manifest weight of the evidence. Defendant's assignment of error lacks merit.
 {¶ 9} "[A] manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000) 9th Dist. No. 19600, at 3, citing State v. Thompkins (1997), 78 Ohio St.3d 380,390 (Cook, J. concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence, "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 10} Defendant was convicted of resisting arrest for domestic violence. R.C. 2921.33 defines resisting arrest, and provides, in pertinent part: "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another person and, during the course of or as a result of the resistance or interference, cause physical harm to a law enforcement officer." R.C. 2921.33(B). One "acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C).
 {¶ 11} For an arrest to be lawful, the officer must have probable cause for the arrest. State v. Wilson (Nov. 18, 1998), 9th Dist. No. 18788, at 5, citing State v. Maynard (1996), 110 Ohio App.3d 6, 10. Probable cause exists when the facts and circumstances known by the officer, at the time of arrest, are sufficient to warrant a reasonable man's belief that a defendant has committed or was committing an offense. State v. Miller (May 23, 2001), 9th Dist. No. 20227, at 6, citing Brinegar v. United States (1949), 338 U.S. 160, 175-76,93 L.Ed. 1879. In the present case, Officer Daniel Grande sought to arrest Defendant for domestic violence. One commits domestic violence if he, "by threat of force, *** knowingly cause[s] a family or household member to believe that the offender will cause imminent physical harm to the family or household member." R.C. 2919.25(C).
 {¶ 12} Defendant was also found guilty of menacing. R.C. 2903.22
states that "[n]o person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person *** or a member of the other person's immediate family." One "acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 13} At trial, Officer Waddell testified that on April 1, 2002, he was dispatched to the Chiampo residence on a domestic violence call. As he approached the house, Officer Waddell heard voices coming from inside. He also observed Officer Grande standing in the entranceway of the home. Officer Waddell explained that he then entered the house. He recalled hearing Defendant, who was angry and upset, telling the officers to leave because they were not welcome. Officer Waddell stated that Defendant was holding a camcorder and Mrs. Chiampo and Amy were both crying and also very upset. He testified that there was too much arguing between the Chiampos so he asked Mrs. Chiampo to accompany him outside in order to "try and figure out what was going on." Officer Grande remained inside with Defendant and Amy.
 {¶ 14} Officer Waddell noted that once outside, Mrs. Chiampo was crying and "[broke] down[.]" He indicated that Mrs. Chiampo explained that Defendant was battling depression and that afternoon had visited her place of employment and made some "ridiculous claims." Officer Waddell testified that Mrs. Chiampo then stated that Defendant had threatened to kill her and Amy and had spit on them. He further testified that due to Mrs. Chiampo's emotional disposition, he believed that she was still fearful of Defendant. He explained that he then radioed Officer Grande and informed him that they had enough information to arrest Defendant. Officer Waddell indicated that he based this decision on Mrs. Chiampo's statements and her demeanor, and also the demeanor of Defendant. Officer Waddell stated that he observed Officer Grande give an affirmative nod. He noted that he then instructed Mrs. Chiampo to remain outside while he reentered the residence to assist in the arrest.
 {¶ 15} Officer Waddell then testified regarding Defendant's behavior after Defendant was informed that he was under arrest for domestic violence. Officer Waddell stated that Defendant shouted "The hell I am," and then turned and ran through the house. The officers' attempts to block him were futile; "[Defendant] just simply blew through [Officer Wadell] and went outside." Officer Waddell explained that although both he and Officer Grande sprayed Defendant with pepper spray, Defendant "just shook that stuff off and threw the camcorder towards [Officer] Grande." He stated that the camera struck Officer Grande in the face. Thereafter, a "big wrestling match" ensued. The officers struggled on the ground with Defendant. Officer Waddell asserted that as he was attempting to pull Defendant off of Officer Grande, he observed both of Defendant's hands on the butt of Officer Grande's pistol. Officer Waddell explained he then applied a "choke hold" to Defendant's throat and Defendant remarked, "You'll have to kill me." Officer Waddell indicated that upon hearing this remark, he extended his police baton and struck the back of Defendant's leg three or four times. Defendant then stood up and ran towards his house.
 {¶ 16} Defendant then kicked the door off the hinges and reentered the house. Officer Waddell stated that he and Officer Grande called for assistance and then resumed the chase. Eventually, Defendant came out of the house and ran over to a parked minivan in his driveway. Officer Waddell maintained that Defendant "locked his hands" onto the hood of the minivan. He testified that the efforts of four officers were needed to handcuff Defendant. Officer Waddell asserted that once Defendant was handcuffed, he became cooperative.
 {¶ 17} Officer Grande offered a similar version of events. He also recalled Defendant shouting and running through the house after he was informed he was under arrest. Officer Grande stated that after he sprayed Defendant with pepper spray, Defendant threw the camcorder he was carrying directly at him. Officer Grande further stated that the camera hit him on the side of the face and the "next thing [he] kn[e]w [he] was down on the ground, face down, with [his] arms at [his] side and [Defendant] was on top of [him]." He indicated that he felt hands around his gun but was unable to decipher whose hands they were as he was lying face down. Officer Grande explained that he firmly pressed his arm and elbow into his gun as hard as he could in order to secure the weapon. He experienced chest pain, muscle strain, and bruising from the incident.
 {¶ 18} The officer stated that Defendant eventually stood up and then ran towards his house. As Defendant forcefully reentered his residence, Officer Grande radioed for assistance. The chase was then resumed. Officer Grande testified that Defendant made his way back to the front door and then ran outside to his driveway. Thereafter, Defendant latched onto a minivan that was parked in the drive. Officer Grande explained that he and Officer Waddell continued to struggle with Defendant in an attempt to handcuff him. He indicated that both he and Officer Waddell tried using their police batons to pry Defendant's hands from the van. Officer Grande stated that they also struck Defendant on the back of the leg in a futile attempt to gain his compliance. He testified that only when Lieutenant Steven Glick and Sergeant Robert Merillat arrived, were the officers able to apprehend Defendant.
 {¶ 19} Lieutenant Glick and Sergeant Merillat also testified at trial. Lieutenant Glick stated that he spoke with Amy after Defendant was handcuffed and placed in the cruiser. He indicated that Amy was still upset and crying. Lieutenant Glick asserted that Amy stated that Defendant had threatened to kill her and Mrs. Chiampo. He maintained that based on their conversation, he felt the threat had been made sometime that day. Sergeant Miller also had an opportunity to speak with Amy that same day. He too recalled her stating that Defendant had threatened to kill her and Mrs. Chiampo.
 {¶ 20} Mrs. Chiampo and Amy offered conflicting testimony. Mrs. Chiampo stated that Defendant had visited her place of employment on April 1, 2002. She indicated that he was upset about his job and wanted to speak with her. Mrs. Chiampo informed him that she would stop home on her lunch break. When she arrived home, Mrs. Chiampo explained that a family argument ensued. She testified that Amy was being "very difficult" and Defendant was acting "pretty nasty." Mrs. Chiampo further testified that she thought Amy was pretending to call the police to scare Defendant. She maintained that Defendant did not make any threats nor cause any physical harm to her or Amy. Mrs. Chiampo stated that she did not tell law enforcement authorities that Defendant had threatened to kill her or Amy. Additionally, Mrs. Chiampo described her encounter with Officer Grande. She explained that she merely opened the door when she saw him walking up the driveway. Mrs. Chiampo indicated that Officer Grande entered the house "on his own."
 {¶ 21} Amy also testified that no threats were made by Defendant. Amy explained that she called the police because she "wanted him to realize how much [she] wanted him to work[.]" Although Amy stated that she did not remember telling the police that Defendant had threatened her, she admitted signing a written statement to the contrary. Amy asserted that she signed the statement because the officer "pretty much" told her to lie so Defendant could receive help. Lastly, Amy indicated that Officer Grande came to the door with handcuffs in hand. She testified that the officer "basically opened the door and walked in and said there was a problem."
 {¶ 22} Upon review of the record, we are unable to conclude that the trial court lost its way and created a manifest miscarriage of justice when it convicted Defendant of menacing and resisting arrest. Although conflicting testimony was presented, we refuse to overturn the verdict because other testimony was found more credible. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the [trier of fact] believed the prosecution testimony." State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4. Accordingly, we hold that Defendant's convictions were not against the manifest weight of the evidence. Defendant's second assignment of error is overruled.
 {¶ 23} Defendant's assignments of error are overruled. The judgment of the Wayne County Municipal Court is affirmed.
BAIRD, J. and BATCHELDER, J. CONCUR.